JOSHUA H. LERNER
CA Bar No. 220755
joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1124

ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone:  (202) 663-6000

*Attorneys for Defendant X Corp.,*
*successor in interest to Twitter, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

SARAH ASHTON-CIRILLO,

          Plaintiff,

     v.

TWITTER, INC.,

          Defendants.

Case No. 3:23-cv-00086-LB

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF**

Hearing Date:  June 29, 2023
Courtroom: B
Time: 9:30 a.m.
Judge: Hon. Laurel Beeler

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS ..................................................................1

STATEMENT OF REQUESTED RELIEF ..................................................................................1

INTRODUCTION .......................................................................................................................1

BACKGROUND .........................................................................................................................2

     A.    Twitter's User Agreement And Content-Moderation Policies ................................2

     B.    Plaintiff's Claims ..................................................................................................4

     C.    This Litigation......................................................................................................4

STANDARD OF REVIEW ..........................................................................................................5

ARGUMENT ..............................................................................................................................5

I.     The Complaint Does Not State A Viable Breach Of Contract Claim (Count II) ...............5

II.    The Complaint Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing (Count I)..................................................................................9

III.   Section 230 Independently Bars Plaintiff's Claims ........................................................11

IV.   Dismissal Should Be With Prejudice .............................................................................15

CONCLUSION..........................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................5

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009).....................12, 13, 14

*Berenson v. Twitter, Inc.*,
No. C 21-09818 WHA, 2022 WL 1289049, (N.D. Cal. Apr. 29, 2022)................................14

*Brittain v. Twitter, Inc.*,
No. 19-CV-00114-YGR, 2019 WL 2423375 (N.D. Cal. June 10, 2019) ..............................12

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ..................................................................8

*Chappel v. Lab'y Corp. of Am.*,
232 F.3d 719 (9th Cir. 2000) ............................................................................15

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) .........................................................................9, 14

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) .................................................................9

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ..................................................................2, 12, 15

*Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116 (N.D. Cal. 2016) (9th Cir. 2018)...........................12

*Gavra v. Google Inc.*,
No. 5:12-CV-06547-PSG, 2013 WL 3788241 (N.D. Cal. July 17, 2013).......................12, 13

*Green v. American Online (AOL)*,
318 F.3d 465 (3d Cir. 2003)...............................................................................6

*Guz v. Bechtel Nat. Inc.*,
24 Cal. 4th 317 (2000) ................................................................................10, 11

*Hamilton v. Greenwich Inv'rs XXVI, LLC*,
195 Cal. App. 4th 1602 (2011), *as modified* (June 15, 2011)...................................5

*King v. Facebook, Inc.*,
572 F. Supp. 3d 776 (N.D. Cal. 2021) ................................................................15

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ....................................................................................6

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ......................................................................................3

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ......................................................................................5

*Mishiyev v. Alphabet, Inc.*,
    444 F. Supp. 3d 1154 (N.D. Cal. 2020) ........................................................................5

*Morton v. Twitter*, *Inc.*,
    No. CV 20-10434-GW-JEMX, 2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) .........6, 8, 12, 13

*Murphy v. Twitter*, *Inc.*,
    60 Cal. App. 5th 12 (2021) .....................................................................................14, 15

*Prager University v. Google LLC*,
    85 Cal. App. 5th 1022 (2022), *review denied* (Mar. 15, 2023) ...........................7, 8, 11

*QuickLogic Corp. v. Konda Techs., Inc.*,
    No. 5:21-CV-04657-EJD, 2022 WL 3046751 (N.D. Cal. Aug. 2, 2022) ..........................9, 10

*Ripple Labs Inc. v. YouTube LLC*,
    No. 20-CV-02747-LB, 2020 WL 6822891 (N.D. Cal. Nov. 20, 2020) ...............................12

*Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ......................................................................15

*Young v. Facebook, Inc.*,
    No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ......................6, 8


**STATUTES, RULES, AND REGULATIONS**

47 U.S.C. § 230 .....................................................................2, 5, 7, 11, 12, 13, 14, 15

Federal Rule of Civil Procedure 12(b)(6) .....................................................................1

DEFENDANT'S NOTICE OF MOTION & MOTION
TO DISMISS; MEMORANDUM AND POINTS OF
AUTHORITIES IN SUPPORT THEREOF
    iii
    Case No. 3:23-cv-00086-LB

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, on June 29, 2023 at 9:30 a.m. or as soon thereafter as the matter may be heard, in the U.S. District Court for the Northern District of California, this Motion to Dismiss filed by X Corp., successor in interest to named defendant Twitter, Inc. ("Twitter") will be heard.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants hereby move this Court to dismiss all claims with prejudice.  This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, and the Declaration of Ari Holtzblatt.

## STATEMENT OF REQUESTED RELIEF

Twitter requests that the Court dismiss Plaintiff's Complaint in its entirety and with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Ashton-Cirillo alleges that various third parties harassed her by tweeting transphobic "insults" and "threats" at her on the Twitter platform.  She does not allege that Twitter created or sent any of these harassing communications.  Yet she has not sued any of the third parties responsible for this alleged harassment.  Instead, she seeks to hold Twitter responsible for those communications on the theory that Twitter's Terms of Service ("Terms") commit Twitter to remove all such content from the online communications platform that Ashton-Cirillo and hundreds of millions of others use for free to share views and information online.  There is no legal merit to either of Ashton-Cirillo's two claims—for breach of contract and breach of the implied covenant of good faith and fair dealing—and both claims should be dismissed with prejudice for two reasons.

First, Ashton-Cirillo's claims run headlong into numerous provisions of Twitter's Terms of Service, which repeatedly and unequivocally establish that Twitter cannot be held legally responsible for harms arising from content that third parties post to the Twitter platform.  The Terms state, for example, that "[a]ll Content is the sole responsibility of the person who originated such Content." They warn that "Your access to and use of the Services or any Content are at your own risk," that Twitter "may not monitor or control the Content posted via the Services," and that Twitter "cannot take responsibility for such Content."  And they expressly reiterate that Twitter "disclaim[s] all responsibility and liability for … any … harm that results from your access to or use of the Services

1    or any Content." Ashton-Cirillo points to no provision in Twitter's Terms of Service that overrides

2    these express and repeated disclaimers absolving Twitter of any responsibility for harms arising from

3    such third-party content.  The Terms themselves thus foreclose Ashton-Cirillo's claims and require

4    dismissal of this action as a matter of law.

5    Second, Section 230 of the Federal Communications Decency Act, 47 U.S.C. § 230,

6    independently requires dismissal with prejudice. The Complaint establishes that Twitter is the provider

7    of an interactive computer service within the meaning of the Act and that Plaintiff seeks to hold Twitter

8    liable for nothing more than allegedly publishing harmful content created by third parties.  Legions of

9    precedent confirm that these are precisely the sort of claims that Section 230 forecloses.

10    Neither of these legal deficiencies can be cured by amendment.  No amendment can plead

11    around the express provisions of the Terms of Service, which, again, disclaim responsibility for harms

12    arising from third-party content that Twitter does not remove from its platform.  And no amendment

13    can circumvent Section 230, which straightforwardly precludes claims, such as these, seeking to

14    impose liability for content created by others.  Moreover, Section 230 is "an immunity statute" that

15    protects platforms "not merely from ultimate liability, but from having to fight costly and protracted

16    legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157,

17    1174-1175 (9th Cir. 2008).  It is therefore especially important the Court dismiss Ashton-Cirillo's

18    claims with prejudice.

19                                                **BACKGROUND**

20    **A.      Twitter's User Agreement And Content-Moderation Policies**

21    Twitter operates an internet communications platform that allows hundreds of millions of

22    people around the world to share their views and track current events.  Compl. ¶1.  Twitter's users

23    communicate their views through posts—called "Tweets"—on Twitter's platform.

24    Twitter's services are generally provided free of charge, but accountholders must agree to a

25    User Agreement, which includes Twitter's Terms of Service and the Twitter Rules and Policies.  *See*

26    Holtzblatt Decl. Ex. A at 1 (herein after, "Terms of Service").  In its Terms of Service, Twitter reserves

27    "the right to remove Content that violates the User Agreement"—including for violations of its

28    Rules—and obligates accountholders to "use the Services only in compliance with the[] Terms."

Terms of Service at 6 ("Using the Services"); Compl. ¶¶24-25.  At the same time, the Terms expressly disclaim responsibility for harms arising from content that third parties post to the platform. Specifically, the Terms state:

> You understand that by using the Services, you may be exposed to Content that might be offensive, harmful, inaccurate or otherwise inappropriate, or in some cases, postings that have been mislabeled or are otherwise deceptive. All Content is the sole responsibility of the person who originated such Content. We may not monitor or control the Content posted via the Services and, we cannot take responsibility for such Content.

Terms of Service at 13 ("Content on the Services").  Other provisions underscore the point: "Your access to and use of the Services or any Content are at your own risk," *id.* at 9 ("Disclaimers and Limitations of Liability"); Twitter "disclaim[s] all responsibility and liability for … any … harm that results from your access to or use of the Services or any Content," *id.*; "Twitter entities shall not be liable for … damage[s] … resulting from … any conduct or content of any third party on the services, including without limitation, any defamatory, offensive or illegal conduct of other users or third parties," *id.* at 10.[1]

The Terms explain that Twitter accountholders should "review the Twitter Rules and Policies …, which are part of the User Agreement and outline what is prohibited on the Services."  Terms of Service at 6 ("Using the Services").  The Rules establish standards regarding what content users may post on the platform, including prohibitions on violence, hateful conduct, and abuse, among others. Compl. ¶¶25-30.  The Rules also describe the types of factors Twitter takes into account in determining whether and how to respond to Rules violations.  Compl. ¶31.  The Rules state, for example, that when determining what action to take in response to a rule violation, Twitter "will look to the type of Rule that is violated," and "the severity of the violation and an individual's previous record of rule violations." Compl. ¶¶29, 31.  Twitter accountholders can report Tweets they believe may violate its Rules.  Compl. ¶32.   The Terms provide that Twitter accountholders "may use the Services only in

---

[1] Ashton-Cirillo's breach of contract claims depend on the Terms of Service, which Ashton-Cirillo quotes extensively throughout the complaint. Compl. ¶¶22-26. This Court can thus consider these Terms pursuant to the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding that courts may consider at the pleadings stage documents "'whose contents are alleged in the complaint'" even when they are not attached to the complaint).

1   compliance with the[] …rules," Terms of Service at 15 ("Using the Services"), and Twitter "reserve[s]

2   the right to remove Content" that violates them, *id.* at 4 ("Content on the Services").  These provisions

3   make clear that the Rules impose obligations on accountholders; but nothing in these or any other

4   provision of the Terms imposes any binding obligation on Twitter regarding how or even whether it

5   enforces the Rules.

6   **B.    Plaintiff's Claims**

7       Sarah Ashton-Cirillo has been a Twitter accountholder since December 2015.  Compl. ¶10.

8   She acknowledges that as a Twitter accountholder, she is bound by the User Agreement, which

9   includes the Terms of Service.  Compl. ¶¶23, 25-26, 48, 55.  Ashton-Cirillo alleges that other Twitter

10  accountholders posted Tweets that threatened her and directed transphobic insults at her.  Compl.

11  ¶¶40-42.  Ashton-Cirillo further alleges that she reported these Tweets to Twitter, and that Twitter

12  responded indicating that it was investigating her complaint.  Compl. ¶58.  The complaint alleges that

13  Twitter did not remove the reported Tweets.  Compl. ¶44.

14  **C.    This Litigation**

15      On July 5, 2022, Ashton-Cirillo commenced this action against Twitter.  Despite the User

16  Agreement's express forum selection clause, she filed this action in the District Court of Colorado for

17  Denver County, rather than in a state or federal court located in San Francisco County, California.

18  Dkt. 1 Ex. A.  On November 4, 2022, Twitter filed an unopposed motion to transfer the case to the

19  Northern District of California.  On January 6, 2023, the court granted the motion.

20      Although this case has been pending before this Court for three months, counsel for Plaintiff

21  has not yet appeared in this case.  In the interim, this Court has issued four notices directing Plaintiff

22  to file her consent or declination to proceed before a magistrate judge.  Dkt. 19, 27, 29, 31.  Counsel

23  for Defendant advised Plaintiff's counsel of the Court's third and fourth notice via e-mail and offered

24  to file the form on his behalf.  Holtzblatt Decl. ¶¶5, 8.  Plaintiff's counsel did not respond to these

25  emails. In light of Plaintiff's counsel's failure to appear and to comply with this Court's orders, counsel

26  for Defendant also emailed Plaintiffs repeatedly to inquire whether Plaintiff still intended to litigate

27  this case.  Holtzblatt Decl. ¶¶6-8.  Since March 16, Plaintiff's counsel has not responded to any of

28  these communications.  Holtzblatt Decl. ¶¶7-8.

**STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint must "plausibly (not merely conceivably) entitle plaintiff to relief." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**ARGUMENT**

Ashton-Cirillo's complaint should be dismissed for two independently sufficient reasons. First, neither her breach of contract claim, nor her breach of the implied covenant of good faith and fair dealing claim state a plausible claim for relief.  Twitter's alleged failure to remove content that violated its Rules cannot state a claim for breach of contract because the Terms expressly disclaim any obligation for Twitter to monitor and remove third-party content from its platform.  Ashton-Cirillo's implied covenant claim, based on the same failure-to-remove theory as her contract claim, likewise fails because it seeks to impose on Twitter an obligation to monitor and remove third-party content that the Terms expressly disclaim.  Second, Section 230(c)(1) immunizes Twitter from both claims. Twitter is an interactive computer service provider and thus qualifies for Section 230 immunity. Section 230(c)(1) bars Ashton-Cirillo's claims because each impermissibly seeks to impose liability on Twitter for allegedly failing to remove third-party content that Ashton-Cirillo alleges caused her harm.  *See* 47 U.S.C. § 230(c)(1).

**I.     THE COMPLAINT DOES NOT STATE A VIABLE BREACH OF CONTRACT CLAIM (COUNT II)**

Ashton-Cirillo's breach of contract claim fails because she has not plausibly alleged the breach of any contract term—an essential element of any such claim.   *See Hamilton v. Greenwich Inv'rs. XXVI, LLC*, 195 Cal. App. 4th 1602, 1614 (2011), *as modified* (June 15, 2011).  When the defendant was "given the right to do what [it] did by the express provisions of the contract there can be no breach." *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020) (quoting *Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992)), *aff'd*, 857 F. App'x 907 (9th Cir. 2021).

Ashton-Cirillo cannot claim that Twitter's alleged failure to remove violative content

constitutes breach because the Twitter Terms of Service disclaim any obligation for Twitter to monitor or remove any third-party content.  The Terms state,

> You understand that by using the Services, you may be exposed to Content that might be offensive, harmful, inaccurate or otherwise inappropriate, or in some cases, postings that have been mislabeled or are otherwise deceptive. All Content is the sole responsibility of the person who originated such Content. We may not monitor or control the Content posted via the Services and, we cannot take responsibility for such Content.

Terms of Service at 4 ("Content on the Services").  As several courts have held, this kind of express disclaimer bars any breach of contract claim based on a social media company's alleged failure to remove harmful third-party content.  *See also Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) (holding that Facebook disavowed the legal relationship plaintiff asserted by warning that "Facebook is not responsible for the actions, content, information, or data of third parties"); *Green v. American Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) ("[B]y their terms, the Member Agreement and Community Guidelines were not intended to confer any rights on Green and AOL did not promise to protect Green from the acts of other subscribers.").

*Morton v. Twitter, Inc.*, No. CV 20-10434-GW-JEMX, 2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) is directly on point. There, a court dismissed a breach of contract claim brought by a user who alleged that Twitter's alleged non-enforcement of its "non-consensual nudity policy" violated its Terms of Service.  *Id.* at 5.  As the court explained,

> Morton has not pointed to any contractual provisions, such as in Twitter's terms of service, that imposed a duty on Twitter to suspend offending accounts.  In fact, Twitter's terms of service specifically disclaim its responsibility for 'any conduct or content of any third party on the services, including without limitation, any defamatory, offensive or illegal conduct of other users or third parties.'

*Id.*  The Terms' express disclaimer likewise bars Ashton-Cirillo's contract claim here.  *See also Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304, *3 (N.D. Cal. Oct. 25, 2010) (dismissing breach of contract claim based on alleged failure to remove "hateful [or] threatening" content prohibited by its "Statement of Rights and Responsibilities" because the parties' contract included an "express disclaimer" that "Facebook is not responsible for the actions, content, information, or data of third parties").

1    None of the contractual provisions on which Ashton-Cirillo relies nullify the Terms' express

2    disclaimer regarding Twitter's responsibility for third-party content:

3    First, Ashton-Cirillo cites to Sections 3 and 4 of the Terms, but neither provision supports her

4    claim for breach.  Section 3 states that Twitter "reserve[s] the right to remove Content that violates the

5    User Agreement."  Compl. ¶24.  That language *allows*—but does not obligate—Twitter to remove

6    violative content.  Likewise, Section 4 states, "You may use the Services only in compliance with

7    these Terms."  Compl. ¶25.  It therefore restricts Twitter accountholders; not Twitter itself.  And

8    neither provision overrides the Terms' express disclaimer that Twitter is not responsible for third-party

9    content.

10    That was precisely the holding of the court in *Prager University v. Google LLC*, 85 Cal. App.

11    5th 1022 (2022), *review denied* (Mar. 15, 2023).  There, in an attempt to evade Section 230 immunity,

12    a YouTube user alleged that YouTube was bound by a "contractual promise to filter content neutrally"

13    because its Community Guidelines "giv[e] the impression that it voluntarily filters the content on its

14    platform using a discrete set of neutral policies." *Id.* at 1037-1038.  The court rejected that argument,

15    explaining that although the Community Guidelines "warn that defendants may remove YouTube

16    videos that run afoul of its standards as to nudity or sexual content, harmful or dangerous content, and

17    hateful content," they "in no way purport to bind defendants to publish any given video, or to remove

18    a video only for violation of those guidelines." *Id.* at 1038. And, at bottom, the Community Guidelines

19    cannot "limit [YouTube's] express reservation of rights." *Id.*  So too here. Twitter's Terms warn users

20    that Twitter may remove content prohibited by the Rules;  nowhere do they promise  users, like

21    Ashton-Cirillo, that Twitter would take down all content that violated its Rules.  Indeed, the Terms

22    expressly disclaim any responsibility for third-party content.

23    Second, Ashton-Cirillo's attempt to establish breach by relying on Twitter's Rules—

24    specifically, Twitter's Violent Threats Policy, Abusive Behavior Policy, and Hateful Conduct

25    Policy—is also unavailing.  Again, nothing in the language of these policies suggest that they

26    modify—let alone vitiate—the Terms' express disclaimer of responsibility to monitor and take down

27    third-party content.  Like Section 4 of the Terms, these policies contain mandatory language that

28    obligates Twitter *accountholders* to refrain from posting certain types of content.  But also like the

1    Terms, the policies do not create reciprocal obligations on Twitter to remove or otherwise act on

2    proscribed content.  The Violent Threats Policy states, for example, that "*you can't state an intention*

3    *to inflict violence on a specific person or group of people.*" Compl. ¶26 (emphasis added).  Likewise,

4    the Abusive Behavior Policy states, "*You may not* engage in the targeted harassment of someone, or

5    incite other people to do so." *Id.* (emphasis added).  And the Hateful Conduct Policy explains, "*You*

6    *may not* promote violence against or directly attack or threaten other people …" *Id.*  (emphasis added).

7    The language of these policies thus binds users, not Twitter.

8          Numerous courts have dismissed breach of contract claims based on social media companies'

9    alleged failure to take down content that allegedly violates their content policies for this reason.  Again,

10   *Morton v. Twitter* is directly on point.  There, the court dismissed a plaintiff's breach of contract claim

11   based on Twitter's alleged failure to enforce its Rules because "there is nothing to indicate that"

12   "Twitter's content-moderation policies, including the 'Non-consensual nudity policy'," "are binding,

13   as opposed to merely aspirational statements." *Morton*, 2021 WL 1181753, at *5.  Likewise, in *Young*

14   *v. Facebook*, the court dismissed a breach of contract claim based on Facebook's alleged failure to

15   enforce its policies against posting content that is "hateful, threatening, or pornographic" because those

16   policies "place restrictions on users' behavior, they do not create affirmative obligations" on Facebook

17   to remove offending content.  *Young*, No. 2010 WL 4269304, at *4; *see also Caraccioli v. Facebook,*

18   *Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) (dismissing similar contract claim), *aff'd*, 700 F.

19   App'x 588 (9th Cir. 2017); *Prager*, 85 Cal. App. 5th at 1038.  Ashton-Cirillo offers no reason why

20   this Court should depart from this consensus.

21         Third, Ashton-Cirillo claims that "Twitter repeatedly promises that if the user reports the

22   violations of its rules, prompt enforcement action will be taken," but she cannot point to any contract

23   term making such a promise.  Compl. ¶ 27.   To the extent Twitter's Rules reference enforcement

24   actions, they merely describe factors that could inform Twitter's enforcement approach and list

25   examples of enforcement options available to Twitter.  Compl. ¶¶ 26, 31.  For example, Twitter's

26   Abusive Behavior Policy notes that Twitter "considers a number of factors" in "determining the

27   penalty for violating this policy," and lists "*potential* enforcement options."  Compl. ¶ 31 (emphasis

28   added); *see also* Compl. ¶ 26 ("[W]e *may* require Tweet removal. … we *may* limit Tweet visibility."

1    (emphasis added)).  Descriptive language of this kind cannot create a mandatory obligation to remove

2    reported content—let alone one that overrides the Terms' express disclaimer of any responsibility over

3    third-party content.   *See Donohue v. Apple, Inc*., 871 F. Supp. 2d 913, 931 (N.D. Cal. 2012)

4    (descriptions in a "User Guide" regarding a technology's functions and directions on how to use the

5    technology do not amount to contractual obligations).

6          That was precisely the holding of a California Court of Appeal in *Cross v. Facebook, Inc*., 14

7    Cal. App. 5th 190 (2017).  In *Cross*, the court dismissed a breach of contract claim by a plaintiff who

8    alleged that Facebook breached its terms of service by failing to take down "harassing and violent

9    speech" that its policies prohibited.  *Id.* at 201.  The plaintiff had argued that Facebook made an

10   "explicit promise" to act on violative content based on statements in the terms of service that are

11   remarkably similar to the ones Ashton-Cirillo relies on here.  *Id.*  For example, Facebook's terms of

12   service included language that described potential enforcement options, such as the statement, "We

13   carefully review reports of threatening language … We remove credible threats of physical harm to

14   individuals."  *Id* at 222 n.4.  And Facebook's terms also described factors that inform Facebook's

15   enforcement approach: "We may consider things like a person's physical location or public visibility

16   in determining whether a threat is credible."  *Id.* The court held that these statements could not be

17   construed as obligating Facebook to remove certain pages; "while Facebook's Terms of Service place

18   restrictions on users' behavior, they do not create affirmative obligations on Facebook."  *Id.* at 201

19   (internal quotation marks omitted).  *Cross* likewise compels dismissal here.

20   **II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF
            GOOD FAITH AND FAIR DEALING (COUNT I)**

21

22          "In most cases, a claim for breach of the implied covenant can add nothing to a claim for breach

23   of contract."  *QuickLogic Corp. v. Konda Techs., Inc.*, No. 5:21-CV-04657-EJD, 2022 WL 3046751,

24   at *8 (N.D. Cal. Aug. 2, 2022).  That is because "[t]o the extent the implied covenant claim seeks

25   simply to invoke terms to which the parties did agree, it is superfluous" of the contract claim.  *Id.*  And

26   if a plaintiff seeks to "impose limits beyond those to which the parties actually agreed, the [implied

27   covenant] claim is invalid."  *Quicklogic*, 2022 WL 3046751, at *8.  Thus, an implied covenant claim

28   is viable only in the rare circumstance where "the plaintiff alleges that the defendant acted in bad faith

1    to frustrate the contract's benefits"—such as, for example, when an employer terminates an at-will

2    employee as "mere pretext" to cheat the worker out of another contract benefit.  *Id.*  Ashton-Cirillo's

3    implied covenant claim suffers from several of these defects.

4         *First*, Ashton-Cirillo's implied covenant claim must be dismissed because it is duplicative of

5    her contract claim.  In *Daniels v. Alphabet Inc.*, a court in this district dismissed a YouTube user's

6    implied covenant claim alleging wrongful removal when it was based on the "same acts" as his breach

7    of contract claim.  No. 20-CV-04687-VKD, 2021 WL 1222166, at *9 (N.D. Cal. Mar. 31, 2021).

8    Specifically, the plaintiff's implied covenant claim alleged that YouTube "unfairly interfered with

9    [p]laintiff's right to receive the benefits of the contract by … taking down [p]laintiff's videos [and]

10   demonetizing [p]laintiffs YouTube channel," and his breach of contract claim likewise alleged that

11   YouTube violated its Terms of Service by "not permitting [plaintiff] to post his videos, unless they

12   violated the Community Guidelines" and "not paying [the plaintiff] based on views and donations."

13   *Id*.  The court therefore dismissed his implied covenant claim as "superfluous."  *Id.*

14        Ashton-Cirillo's implied covenant claim is likewise duplicative of her contract claim as both

15   challenge Twitter's failure to remove third-party content from Twitter's platform.  Her breach of

16   contract claim alleges that "Twitter also failed to take any enforcement action with respect to Sarah's

17   reports." Compl. ¶ 59.  And her implied covenant claim faults the very same conduct—namely,

18   Twitter's alleged failure to "enforce violations of its Terms of Service, its Rules, and its Policies that

19   were reported by Sarah." Compl. ¶ 51.  As in *Daniels*, therefore, Ashton-Cirillo's implied covenant

20   claim should be dismissed as "superfluous" of her contract claim.  *Daniels*, 2021 WL 1222166, at *9.

21        *Second*, Ashton-Cirillo's implied covenant claim also fails because it seeks to impose on Twitter

22   an obligation to monitor and remove third-party content that the Terms of Service expressly disclaim.

23   The implied covenant cannot "impose substantive terms and conditions beyond those to which the

24   contract parties actually agreed."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000).  Applying that

25   principle, courts in this district have dismissed implied covenant claims challenging a platform's

26   application of its content moderation policies when the terms of service afford the platform sole

27   discretion over the content made available on the platform.  For example, in *Enhanced Athlete Inc. v.*

28   *Google LLC*, the court rejected a user's claim that YouTube applied its Community Guidelines in bad

faith to remove his account because "the parties' agreements authorized Defendants, in their discretion, to remove Plaintiff's videos and delete its accounts." 479 F. Supp. 3d 824, 833 (N.D. Cal. 2020).  Likewise, in *Ebeid v. Facebook, Inc.*, the court dismissed a Facebook user's implied covenant claim alleging that Facebook applied its content moderation policies in a "discriminatory" fashion because "Facebook had the contractual right to remove or disapprove any post or ad at Facebook's sole discretion."  No. 18-CV-07030-PJH, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019); *see also Prager*, 85 Cal. App. 5th at 1039 (rejecting the plaintiff's claim that "the implied covenant of good faith and fair dealing obligated defendants to make publishing decisions in a manner Prager alleges good faith requires" because it would "impose … a duty that would be at odds with the express reservation of defendants' unfettered discretion in making publishing decisions").

This straightforward principle requires dismissal of Ashton-Cirillo's implied covenant claim. As discussed above, *supra* pp. 3-6, the Terms expressly provide that Twitter "may not monitor or control the Content posted via the Services" and that it "cannot take responsibility for such Content." Yet Ashton-Cirillo's implied covenant claim seeks to impose on Twitter precisely that responsibility: to remove allegedly harmful third-party content she reported to Twitter.  Because her implied covenant claim "impose[s] substantive terms and conditions beyond those to which" she and Twitter agreed in the Terms, that claim must be dismissed.  *Guz*, 24 Cal. 4th at 349.

### III.   SECTION 230 INDEPENDENTLY BARS PLAINTIFF'S CLAIMS

Even beyond Ashton-Cirillo's failure to plead the elements of her claims, Twitter is immune from those claims because they impermissibly seek to impose liability on Twitter for publishing content created by third parties.  *See* 47 U.S.C. § 230(c)(1).

Section 230 commands that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  As the Ninth Circuit explained, by its terms this provision "immunizes providers of interactive computer services against liability arising from content created by third parties."  *Roommates.com*, 521 F.3d at 1162; *see also Ripple Labs Inc. v. YouTube LLC*, No. 20-CV-02747-LB, 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20, 2020) (Beeler, J.).  "Section 230 of the CDA was intended to protect websites against the evil of liability for failure to remove offensive

content." *Gavra v. Google Inc.*, No. 5:12-CV-06547-PSG, 2013 WL 3788241, at *3 (N.D. Cal. July 17, 2013).  That is precisely what Ashton-Cirillo's claims seek to do here:  impose liability on Twitter for allegedly failing to "take any enforcement action" to remove offensive content posted by other Twitter users.  Compl. ¶¶43, 45.

Section 230 mandates dismissal when (1) the defendant is a "provider . . . of an interactive computer service"; (2) the allegedly harmful content at issue was "provided by another information content provider," and not the defendant; and (3) the plaintiff is seeking to hold the defendant liable as a "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-1101 (9th Cir. 2009), *as amended* (Sept. 28, 2009).  Each of these elements is satisfied here.

First, "Twitter is clearly an interactive computer service provider."  *Morton*, 2021 WL 1181753, at *3; *see also Fields v. Twitter, Inc.,* 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016), *aff'd,* 881 F.3d 739 (9th Cir. 2018) ("Plaintiffs do not dispute that Twitter is an interactive computer service provider"); *Brittain v. Twitter, Inc.,* No. 19-CV-00114-YGR, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019) (on a motion to dismiss, "[t]he Court finds that Twitter qualifies as an interactive computer service).  The statute defines an interactive computer service provider as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f). And "as an online microblogging and social media platform, [Twitter] allows its users to post messages on the platform for the public to see." *Id.*; *see also* Compl. ¶1 (describing Twitter as a "microblogging service where users post messages known as 'tweets,' and interact with other users").

Second, Ashton-Cirillo's claims concern content "provided by *another* information content provider," 47 U.S.C. § 230(c)(1) (emphasis added), because she faults Twitter for allegedly failing to remove Tweets posted by third parties to its platform. The Complaint alleges that Ashton-Cirillo was subject to "insults," "misgendering" and "threats" by other Twitter users, and Ashton-Cirillo seeks to impose liability on Twitter for "failure to take any enforcement action" on those third-party posts. Compl. ¶¶18, 41, 45, 46, 59.  Therefore, her claims concern content provided by "another information content provider." *See Morton,* 2021 WL 1181753, at *4 ("While the tweets are posted on Twitter's

platform, it is clear that it was SpyIRL [a third party] – not Twitter – that chose to post the offending tweets."); *Gavra,* 2013 WL 3788241, at *2.

Finally, the Complaint and each of its causes of action seek to hold Twitter liable as the publisher of third-party Tweets. *See* 47 U.S.C. § 230(c)(1).  To prevent plaintiffs from skirting Section 230's protection, courts have emphasized that "what matters is not the name of the cause of action." *Barnes,* 570 F.3d at 1101-1102.  What matters is whether the cause of action seeks to impose liability for "*publishing conduct*"—such as "reviewing, editing, and deciding whether to publish or to *withdraw from publication* third-party content." *Id.* at 1101-1103 (second emphasis added).  The Complaint alleges that Twitter allegedly failed "to take any enforcement action" to remove content posted by Twitter users that directed "threats, insults, misgendering, and vile hatred" towards her. Compl. ¶¶45-46.  As such, Ashton-Cirillo's claims seek to impose liability on Twitter for allegedly failing to "withdraw from publication third-party content." *Barnes,* 570 F.3d at 1103.

Courts in the Ninth Circuit have routinely applied Section 230 to bar contract claims in which plaintiffs allege that a platform purportedly breached its Terms of Service by allegedly publishing and failing to remove harmful third-party content. *Morton v. Twitter,* is, again, directly on point.  There, the court held that a breach of contract claim based on Twitter's "alleged failure to enforce its 'Non-consensual nudity policy'" was barred by Section 230.  2021 WL 1181753  at *5.  The plaintiff in that case had argued that Twitter "'undertook the contractual duty to create a safe platform by suspending illegal pornography accounts,'" and breached it "by failing to timely suspend" certain accounts that violated its non-consensual nudity policy. *Id.*  The court reasoned that "the actions that Morton alleges Twitter failed to take – thereby breaching its duty – are suspending a user's account," and "to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Id.*

Likewise, in *Calise v. Meta Platforms, Inc.*, the court held that Section 230 bars plaintiff's breach of contract claim based on Meta's alleged "fail[ure] to remove fraudulent ads and enforce its ad policies" because these allegations "stem[] from Meta's role as publisher."  No. 21-CV-06186-JSW, 2022 WL 1240860, at *4 (N.D. Cal. Apr. 27, 2022).  And in *Cross v. Facebook, Inc.*, the California Court of Appeal held that Section 230 barred a Facebook user's claim that Facebook

breached its Terms of Service by allegedly failing to remove certain third-party content that violated its content standards.  14 Cal. App. 5th at 206.

The same reasoning applies here.  As in all these cases, Ashton-Cirillo's contract claim and implied covenant claim seek to impose liability on Twitter for allegedly failing to remove third-party content that Ashton-Cirillo believes violated Twitter's platform Rules. Compl. ¶¶51-52, 56-58.  Such claims are perforce immune under Section 230(c)(1).

Although some courts have declined to apply Section 230 to a subset of contract or promissory estoppel claims, they have done so only where the plaintiff identified some "specific representation of fact or promise by [the platform operator] to [the plaintiff] that it would not remove her [content] or suspend her account." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 32 (2021).  In *Barnes*, for example, the Ninth Circuit declined to apply Section 230 to a promissory estoppel claim because Yahoo's director of communications told a plaintiff that she would "personally walk the statements over to the division responsible for stopping unauthorized profiles and they would take care of it."  *Barnes*, 570 F.3d at 1101-1102.  By contrast, courts have recognized that Section 230 immunizes breach of contract claims that are based on a platform's general content moderation policies.  That was the holding of the California Court of Appeal in *Murphy v. Twitter*, where the court held that the plaintiff's breach of contract claim, which purported to be based on "general statements in [Twitter's] monitoring policy," could not pierce Twitter's statutory immunity under Section 230(c)(1).  *Murphy*, 60 Cal. App. 5th at 32; *see also Barnes*, 570 F.3d at 1108-1109 (holding that a platform's failure to abide by its "general monitoring policy … does not suffice for contract liability" such that it alters the "baseline rule" of Section 230(c)(1) immunity); *Berenson v. Twitter, Inc.*, No. C 21-09818 WHA, 2022 WL 1289049, at *2.  (N.D. Cal. Apr. 29, 2022) (permitting promissory estoppel claim to survive Twitter's motion to dismiss based on Section 230 only where a Twitter vice president "gave specific and direct assurances to plaintiff regarding his posts" (emphasis in original)).  Thus, Section 230(c)(1) bars Ashton-Cirillo's claims because "the gravamen of [her] complaint seeks to hold Twitter liable, not for specific factual representations it made," but for allegedly failing to enforce generally applicable policies to remove

1   content posted by third parties on its platform.  *Murphy*, 60 Cal. App. 5th at 30.

2   **IV.   DISMISSAL SHOULD BE WITH PREJUDICE**

3          Ashton-Cirillo's complaint should be dismissed with prejudice because any further amendment

4   would be futile. *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725-726 (9th Cir. 2000). Additional

5   allegations cannot save Ashton-Cirillo's breach of contract and implied covenant claims because

6   nothing Ashton-Cirillo might allege can overcome the plain language of the Terms, which, again,

7   expressly disclaim any obligation for Twitter to remove any particular content.  Nor can any new

8   allegations circumvent Section 230's protections against liability for allegedly publishing or failing to

9   remove third party content.

10         Section 230 makes a prejudicial dismissal especially appropriate here.  As the Ninth Circuit

11  emphasized in *Roommates.com*, Section 230 is "an immunity statute" that protects platforms "not

12  merely from ultimate liability, but from having to fight costly and protracted legal battles."

13  *Roommates.com*, 521 F.3d at 1174-1175.  For this reason, courts routinely grant prejudicial dismissal

14  of claims on a defendant's first motion to dismiss where it is clear, as it is here, that Section 230

15  categorically bars those claims.  *See, e.g.*, *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 796 (N.D. Cal.

16  2021) (dismissing claims barred by Section 230 with prejudice); *Ebeid*, 2019 WL 2059662, at *8

17  (same); *Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1097 (N.D. Cal. 2015)

18  (same), *aff'd sub nom. Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017).  The

19  court should do the same here.

20         Finally, dismissal with prejudice is particularly appropriate because Plaintiff's counsel has not

21  made any serious effort to prosecute this case.   Although this case has been pending before this Court

22  for more than three months, counsel for Plaintiff has not even appeared, or made any effort to comply

23  with any of the Court's four notices directing Plaintiff to file a consent or declination form.  Dkt. 19,

24  27, 29, 31.   And he has ignored repeated offers by Defendant's counsel to file the consent or

25  declination form on his behalf, as well as counsel's inquiries as to whether Plaintiff still intends to

26  litigate the case.  Holtzblatt Decl. ¶¶5-8.  Ashton-Cirillo's failure to pursue her claims with diligence

27  is thus an additional factor counseling in favor of dismissal with prejudice.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, Ashton-Cirillo's Complaint should be dismissed with prejudice.

Dated: April 13, 2023

Respectfully submitted,

/s/    *Ari Holtzblatt*
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone: (202) 663-6000

JOSHUA H. LERNER
CA Bar No. 220755
joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1124

*Attorneys for Defendant X Corp.,*
*successor in interest to Twitter, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 13, 2023 I electronically filed the above document and the accompanying declaration of Ari Holtzblatt and proposed order with the Clerk of the Court using CM/ECF which will send electronic notification of these filings to all registered counsel.

Dated:    April 13, 2023

By:    _Ari Holtzblatt_
ARI HOLTZBLATT